IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ERIK JENSEN on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNDERGROUND ENTERPRISES, INC.,<br><br>Defendant. | No. _____<br><br>**JURY TRIAL DEMANDED**<br><br>**CLASS ACTION** |

**CLASS ACTION COMPLAINT**

Plaintiff Erik Jensen ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class" as defined below), by and through his attorneys, alleges as follows against Defendant Underground Enterprises, Inc. ("Underground Cellar"), the owner and operator of Underground Cellar.

**INTRODUCTION**

1. This is a class action brought against Underground Cellar by Plaintiff on behalf of himself and a class of individuals who purchased wine from Underground Cellar that Underground Cellar is currently storing but refusing to ship to consumers.

2. Underground Cellar is an online wine club and retailer. It sells wines from numerous well-known wineries and claims to offer significant discounts off the real value of the wines. The company offers what it describes as a game-like experience, offering buyers the opportunity to be randomly upgraded to more expensive bottles of wine.

3. As part of the service, Underground Cellar offers to store the wine customers buy in its temperature-controlled warehouse. A customer can view their stored wine in their Underground Cellar Cloud account and can have it shipped to them at any time.

4. On or around April 24, 2023, Underground Cellar posted an announcement on its website that it was ending all sales and shipping.

5. The company did not contact customers directly about the shutdown.

6. Customers with wine they already purchased, often thousands of dollars-worth, stored with Underground Cellar are unable to get the wine back. Customers can still view their CellarCloud accounts, but the website does not allow them to effect shipment of their wine.

7. Attempts to contact Underground Cellar by email and phone go unanswered.

8. The wine customers have already purchased and rightly own is effectively being held hostage.

9. Plaintiff and Class Members have been deprived of the benefit of the bargain and have suffered ascertainable loss. Plaintiff accordingly seeks relief both for himself and for other consumers who currently have wine stored with Underground Cellar.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over Defendant because it is incorporated in and regularly conducts business in Delaware, and otherwise has sufficient minimum contacts with Delaware to justify the exercise of jurisdiction.

11. Venue properly lies in this District because Defendant is incorporated in and regularly conducts business in this District. Defendant's terms and conditions also contain a forum selection clause requiring suits to be filed in Delaware, as well as a Delaware choice of law clause.[1]

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## PARTIES

### Plaintiff Erik Jensen

13. Plaintiff Erik Jensen is a citizen and resident of New Jersey.

14. Mr. Jensen has been using Underground Cellar for over a year.

15. Mr. Jensen currently has 42 bottles of wine that he already paid approximately $1,742.48 for that are stored in his CellarCloud account. Underground Cellar states the actual value of these bottles is $3,115.

16. He saw the alert posted on the website on April 24, 2023. Mr. Jensen immediately tried to ship his remaining bottles of wine but was unable to do so through the website.

17. Mr. Jensen emailed Underground Cellar and received no response.

18. Mr. Jensen purchased the wine for personal and household use.

---

[1] *See* https://www.undergroundcellar.com/page/terms (last visited April 28, 2023) ("The Terms, and your relationship with Underground Cellar under the Terms, shall be governed by the laws of the State of Delaware without regard to its conflict of laws provisions. You and Underground Cellar agree to submit to the exclusive jurisdiction of the courts located within the State of Delaware to resolve any legal matter arising from the Terms.").

19. Had he known Underground Cellar would shut down without shipping him the wine he would never have purchased it.

20. Mr. Jensen has suffered ascertainable loss in the amount he paid for the wine. To date, Underground Cellar has not agreed to provide any relief to Mr. Jensen and similarly situated consumers.

**Defendant**

21. Underground Enterprises, Inc. ("Underground Cellar") is a Delaware Limited Liability Company headquartered in San Francisco, California.

22. Underground Cellar is engaged in the business of operating an online wine club and retailer of the same name. Through its website, Underground Cellar sells wine across the United States.

23. The decisions related to the website, operations, and shutdown are controlled by Underground Cellar and its agents and affiliates.

**FACTUAL ALLEGATIONS**

A. **Underground Cellar**

24. Underground Cellar bills itself as "a groundbreaking online wine marketplace for discovering and buying premium wine that randomly rewards our consumers with free upgrades to rare and private-stash bottles from prestigious wineries."

25. The company has been described as seeking to disrupt the internet wine industry through the "gamification" of wine sales.[2]

---

[2] https://www.forbes.com/sites/hudsonlindenberger/2021/11/29/the-company-seeking-to-change-e-commerce-wine-sales/?sh=1985cfe750bf ("This Startup Is Seeking To Disrupt E-Commerce Wine Sales With Gamification") (Nov. 29, 2021).

26.     As part of this, the company advertises that it will occasionally, and randomly, upgrade a purchased bottle of wine to a similar but more expensive bottle:



27.     A major part of Underground Cellar's service and appeal to consumers is Cloud storage. This allows consumers to purchase wine and have Underground Cellar store it in its climate-controlled warehouse until a customer is ready to take delivery.

28.     Per their website, Underground Cellar promises the wine will be safe and secure and consumers can opt to have it shipped to them whenever they like.

29.     For example, their website states: "What is CloudCellar? We provide our active members the ability to accumulate and store their purchases for free in our state-of-the-art, humidity and temperature controlled wine cellar located in Napa Valley, CA. Known as the 'CloudCellar,' members can mix-and-match bottles from different wineries over time, and when they are ready to take them out of the 'cellar,' they simply click on their 'CloudCellar' tab and select which bottles they want delivered. Our members can even request them to arrive chilled and ready to drink to nearly anywhere in the US. This is a cost-effective and great way to accumulate bottles as users get free ground shipping when shipping 12 bottles."

30.     The wines stored in a customer's CloudCellar account have already been paid for by the customer and rightfully belongs to the customer.

31. When a customer orders wine, he or she may opt either to have it shipped right away or have it stored in his or her CloudCellar account.

**B.     April 24, 2023 Shutdown**

32. On April 24, 2023, Underground Cellar posted a banner on the top of its website indicating it was shutting down and ceasing all new sales and shipping.



33. Underground Cellar did not email or otherwise directly notify each of its consumers about the shutdown.

34. It also has not provided any additional details on the shutdown, its operations, or how consumers can get the wine they have already purchased.

35. When a customer goes to their CloudCellar account they can still view the wines the own but there is no longer an option to have them shipped.

36. Plaintiff's experience is by no means isolated. Scores of consumers have taken to social media to describe their recent inability to receive their wine from Underground Cellar.

37. Numerous customers report having emailed Underground Cellar and received no response. Likewise, the company has stopped answering phone calls.

38. Many consumers have hundreds or even thousands of dollars of wine that they have paid for that are currently stored with Underground Cellar.

39. This wine is effectively being held hostage with no communication and no recourse.

40. As a consequence of Underground Cellar's action and inaction, Plaintiff and Class members have been deprived of the benefit of their bargain, suffered an ascertainable loss, and are being deprived of the wine they have already paid for and rightfully own.

## CLASS ACTION ALLEGATIONS

41. This action is brought and may be maintained as a class action, pursuant to Rule 23(a), (b)(2), (b)(3), and/or (c)(4) of the Federal Rule of Civil Procedure.

42. The Class is defined as follows:

> All persons in the United States who bought wine that is being stored in Underground Cellar's CloudCellar.

43. In addition, or in the alternative, State Subclasses are defined as follows:

> All persons in New Jersey who bought wine that is being stored in Underground Cellar's CloudCellar.

44. Excluded from the Class are Defendant, its affiliates, employees, officers and directors; and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change, or expand the class definitions in light of discovery and/or further investigation.

45. **Numerosity**: The Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class is unknown at this time, as such information is in the sole possession of Underground Cellar and is obtainable by Plaintiff only through the discovery process, Plaintiff believes, and on that basis alleges, that at least hundreds of customers have wine stored with Underground Cellar. Members of the Class can be readily identified and notified based upon, *inter alia*, the records maintained by Underground Cellar.

46. **Existence and Predominance of Common Questions of Fact and Law**: Common questions of law and fact exist as to all members of the Class. These questions predominate over

the questions affecting individual Class Members. These common legal and factual questions include, but are not limited to:

    a.    whether Underground Cellar engaged in the conduct alleged herein;

    b.    whether Underground Cellar breached its contracts with Plaintiff and Class Members.

    c.    whether Underground Cellar should return the wine owned by Plaintiff and Class Members

    d.    whether Underground Cellar's conduct alleged herein violates consumer protection laws, warranty laws, and other laws as asserted herein;

    e.    whether Plaintiff and Class Members have suffered an ascertainable loss as a result of Underground Cellar's refusal to return their wine;

    f.    whether Plaintiff and Class Members are entitled to damages, including punitive damages, as a result of Underground Cellar's conduct alleged herein, and if so, the amount or proper measure of those damages; and

    g.    whether Plaintiff and Class Members are entitled to equitable relief, including but not limited to restitution and/or injunctive relief.

47.    **Typicality**: Plaintiff's claims are typical of the claims of the Class because he purchased wine that is being stored with Underground Cellar, as did each member of the Class. Plaintiff and Class Members were economically injured in the same manner by Underground Cellar's uniform course of conduct alleged herein. Plaintiff and Class Members have the same or similar claims against Underground Cellar relating to the conduct alleged herein, and the same conduct on the part of Underground Cellar gives rise to all the claims for relief.

48.     **Adequacy**: Plaintiff is an adequate representative of the Class, whose interests do not conflict with those of any other Class Member. Plaintiff has retained counsel competent and experienced in complex class action litigation—including consumer class actions—who intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

49.     **Superiority**: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of these claims, including from the need for expert witness testimony on the technical and economic aspects of the case. Individualized litigation also would risk inconsistent or contradictory judgments and increase the delay and expense to all parties and the courts. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

50.     **Injunctive Relief**: Underground Cellar has acted, and refuses to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## CLAIMS FOR RELIEF

### COUNT I
### BREACH OF CONTRACT
**Plaintiff, Individually, and on Behalf of the Nationwide Class and State Subclasses**

51.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing allegations as though fully set forth herein.

52. Plaintiff brings this claim individually and on behalf of the Class and Subclass pursuant to the laws of Delaware.

53. Plaintiff and Defendant entered into contracts for the purchase of wines from Underground Cellar.

54. Plaintiff and Class Members have fully performed all material covenants, conditions and obligations that they were required to perform by reason of their contracts, except to the extent waived, excused, or made impossible by Defendant's breaches of the contract.

55. On the other hand, the Plaintiff and Class Members never agreed that Defendant could unilaterally stop shipping wine Plaintiff and Class Members have already purchased. This term is not part of the parties' contracts with one another, and Defendant did not have the right to act as such under the terms of its agreements with Plaintiff and Class Members.

56. Defendant's conduct frustrated the entire purpose of the contract and the reasons for why Plaintiff and Class Members contracted with Defendant in the first place, and materially breached its contracts with Plaintiff and Class Members, which had the direct and proximate effect of causing damages to Plaintiff and Class Members in an amount to be proven at trial, plus interest allowable under applicable law.

57. Plaintiff demands an award of specific performance, any consequential damages, reasonable attorneys' fees and costs, and any other relief afforded under the laws of Delaware.

### COUNT II
### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
**Plaintiff, Individually, and on Behalf of the Nationwide Class and State Subclasses**

58. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing allegations as though fully set forth herein.

59. Plaintiff brings this claim individually and on behalf of the Class and Subclass pursuant to the laws of Delaware.

60. A covenant of good faith and fair dealing is implied in every contract and imposes upon each party a duty of good faith and fair dealing in its performance of the contract. Common law calls for substantial compliance with the spirit, not just the letter, of a contract in its performance. The duty to act in good faith and deal fairly requires adherence to commercial norms and prevents a contracting party from acting in contravention of the counterparty's objectively reasonable expectations arising from the agreement.

61. Underground Cellar breached the covenant of good faith and fair dealing when it shut down and stopped shipping Plaintiff and Class Members the wine they have already purchased.

62. All conditions required for Plaintiff's and the Class members' performance under the agreement occurred. Plaintiff and Class Members were uniformly and materially overcharged pursuant Underground Cellar's breaches.

63. As a direct and proximate result of Underground Cellar's breaches of the covenant of good faith and fair dealing, Plaintiff and Class Members have been damaged in an amount to be proven at trial.

**COUNT III**
**Delaware Consumer Fraud Act**
**Del. Code Ann. tit. 6, § 2511, *et seq*.**
**Plaintiff, Individually, and on Behalf of the Nationwide Class and State Subclasses**

64. Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

65. Plaintiff brings this cause of action individually and on behalf of the members of the Class and Subclass.

66. The Delaware Consumer Fraud Act ("DCFA") was created to protect consumers from deceptive and unfair business practices.

67. Underground Cellar is a "person," and the wine bottles are "merchandise" as defined by the DCFA.

68. Plaintiff purchased wine for personal purposes.

69. Underground Cellar marketed and advertised the wine and CloudCellar feature to consumers in Delaware and otherwise conducted business in Delaware, all while being incorporated in Delaware. Underground Cellar includes in its terms and conditions a Delaware choice of law clause.

70. As set forth more fully above, Underground Cellar marketed to consumers that they could purchase wine and store it in the CloudCellar and would have access to it whenever they wanted. While selling and profiting from the wine sales, Underground Cellar knew that it had problems and would not be able to uphold its promise to deliver the wine to consumers. Underground Cellar intentionally concealed this material information from consumers, who would never have purchased wine from Underground Cellar.

71. Underground Cellar concealed and failed to disclose in any of its marketing materials, advertising, packaging, and/or any other communication that consumers would not be able to receive the wine they purchased and stored with Underground Cellar. These material omissions were misleading and deceptive.

72. Underground Cellar's conduct described herein constitutes the act, use or employment of conduct in connection with the sale and advertisement of merchandise, the wine, in trade or commerce in Delaware, which conduct created confusion or misunderstanding on the

part of Delaware Plaintiff and Class Members, making it unlawful under Del. Code Ann. tit. 6, § 2511, *et seq.*

73. Underground Cellar's conduct constituted, among other things, the following prohibited fraudulent, deceptive, and unfair business practices: (a) misrepresenting that the its services have characteristics, ingredients, uses, or benefits, which they do not have; and (b) engaging in fraudulent and deceptive conduct that creates a likelihood of confusion and misunderstanding.

74. Underground Cellar's conduct was fraudulent and deceptive because the omissions created a likelihood of confusion and misunderstanding and had the capacity or tendency to deceive and, in fact, did deceive, reasonable consumers, including Plaintiff. Reasonable consumers, including Plaintiff, would have found it material to their purchasing decisions that they would not be able to receive the wine they purchased.

75. Underground Cellar owed Plaintiff and Class Members a duty to disclose these facts because they were known and/or accessible exclusively to Underground Cellar. Underground Cellar had exclusive and superior knowledge of the facts; because the facts would be material to reasonable consumers; because Underground Cellar actively concealed them; and because Underground Cellar intended for consumers to rely on the omissions in question.

76. Plaintiff and Class Members reasonably and justifiably relied on the omissions by Underground Cellar, and reasonable consumers would have been expected to rely upon these omissions.

77. Underground Cellar's conduct actually and proximately caused an ascertainable loss of money or property to Plaintiff (as set forth above) and Class Members. Absent Defendants'

unfair and fraudulent conduct, Plaintiff and Delaware Class Members would have behaved differently and would not have purchased wine through Underground Cellar.

78. Accordingly, pursuant to Del. Code Ann. tit. 6, § 2511, *et seq.*, Plaintiff and Class Members are entitled to recover their actual damages, which can be calculated with a reasonable degree of certainty using sufficiently definitive and objective evidence. Those damages are the value of the wine stored in CloudCellar or delivery of the actual wine. In addition, given the nature of Underground Cellar's conduct, Plaintiff and Class Members are entitled to recover all available statutory, exemplary, treble, and/or punitive damages, costs of suit, and attorneys' fees based on the amount of time reasonable expended and equitable relief necessary, and all such other relief as the Court deems proper.

## COUNT IV
**Unjust Enrichment**
**In the Alternative to All Other Claims**
**Plaintiff, Individually, and on Behalf of the Nationwide Class and State Subclasses**

79. Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

80. Plaintiff bring this claim, under the laws of Delaware, individually and on behalf of the Class and Subclass.

81. This claim is pleased in the alternative to the other claims set forth herein.

82. As the intended and expected result of its conscious wrongdoing, Underground Cellar has profited and benefited from the purchase of wine by Plaintiff and Class Members that is currently being stored in its CloudCellar.

83. Underground Cellar has voluntarily accepted and retained these profits and benefits, knowing that, as a result of its misconduct alleged herein, Plaintiff and the Class Members were

not receiving the wine they already paid for and rightfully own as a reasonable consumer would expect.

84. Underground Cellar has been unjustly enriched by its deceptive, wrongful, and unscrupulous conduct and by its withholding of benefits, wine, and monies from Plaintiff and Class Members rightfully belonging to them.

85. Equity and good conscience militate against permitting Underground Cellar to retain these profits, benefits, and wine from its wrongful conduct. They should accordingly be disgorged or placed in a constructive trust so that Plaintiff and Class Members can obtain restitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, hereby requests that this Court enter an Order against Underground Cellar providing for the following:

A. Certification of the proposed Class, appointment of Plaintiff and his counsel to represent the Class, and provision of notice to the Class;

B. An order permanently enjoining Underground Cellar from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C. Injunctive and equitable relief in the form of return of all wine that Class Members have already bought;

D. Costs, restitution, damages, including punitive damages, penalties, and disgorgement in an amount to be determined at trial;

E. An Order requiring Underground Cellar to pay pre- and post-judgment interest on any amounts awarded, as provided by law;

F. An award of reasonable attorneys' fees and costs as permitted by law; and

G. Such other or further relief as may be appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all claims so triable.

Dated: April 28, 2023                                Respectfully submitted,

                                                By:     */s/ Robert J. Kriner, Jr.*
                                                          Robert J. Kriner, Jr. (#2546)
                                                          Scott M. Tucker (#4925)
                                                          **Chimicles Schwartz Kriner**
                                                          **& Donaldson-Smith LLP**
                                                          2711 Centerville Road, Suite 201
                                                          Wilmington, DE 19808
                                                          rjk@chimicles.com
                                                          smt@chimicles.com


                                                          Steven A. Schwartz
                                                          Beena M. McDonald
                                                          Alex M. Kashurba
                                                          **CHIMICLES SCHWARTZ KRINER**
                                                           **& DONALDSON SMITH LLP**
                                                          361 W. Lancaster Avenue
                                                          Haverford, Pennsylvania 19041
                                                          Tel: (610) 642-8500
                                                          sas@chimicles.com
                                                          bmm@chimicles.com
                                                          amk@chimicles.com

                                                          *Counsel for Plaintiffs and the Proposed Putative Class Members*